James B. Hardin, SBN 205071
jhardin@hardintrial.com
HARDIN LAW GROUP, APC
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Telephone: (949) 337-4810

*Attorneys for Plaintiffs,*
Steven F. and J.F.

Anna P. Christiansen, Utah Bar No. 17518
(*pro hac vice forthcoming*)
anna.christiansen@cjlaw.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN F. and J.F.,<br><br>Plaintiffs,<br><br>v.<br><br>CARELON BEHAVIORAL HEALTH, INC.; PACIFIC GAS AND ELECTRIC COMPANY; THE EMPLOYEE BENEFIT COMMITTEE OF PG&E CORPORATION; and THE PACIFIC GAS AND ELECTRIC COMPANY HEALTH CARE PLAN FOR ACTIVE EMPLOYEES,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiffs Steven F. and J.F., by and through counsel of record, complain against Defendants and allege, collectively and in the alternative, as follows:

**INTRODUCTION**

This action arises from Defendants' wrongful refusal to pay benefits due under an employee welfare benefit plan for medically necessary mental health and substance use disorder treatment provided to J.F., a covered minor beneficiary at the times relevant hereto. Steven F. participated in The Pacific Gas and Electric Company Health Care Plan for Active Employees (the "Plan") and enrolled J.F. as a dependent beneficiary. Carelon Behavioral Health, Inc. ("Carelon") administered claims for mental health and substance use disorder benefits under the Plan.

J.F. received inpatient mental health and substance use disorder treatment at Elements Wilderness Program ("Elements") from June 2, 2021, through August 20, 2021, and again from March 23, 2022, through May 11, 2022. Elements is an intermediate-level outdoor behavioral health program licensed to provide inpatient mental health and substance use disorder treatment to adolescents.

Defendants denied coverage for both treatment periods. Defendants did not challenge the medical necessity of the treatment, its effectiveness, or any other aspect of the care J.F. received. Instead, they denied benefits solely on the grounds that outdoor behavioral health services were not covered under the Plan. This denial was wrongful, and through this suit, Plaintiffs seek to recover the benefits owed them under the Plan.

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs are residents of Contra Costa County, California. Steven F. is the parent of J.F.

2. This case involves mental health treatment and other confidential medical and mental health information. J.F. was a minor at the time of the treatment at issue herein. Using Plaintiffs' full names and surnames would tend to render them identifiable and would intrude upon private health care matters, including matters protected by HIPAA.

3. Through his employment with Defendant Pacific Gas and Electric Company ("PG&E"), Steven F. was a participant in The Pacific Gas and Electric Company Health Care Plan

for Active Employees, with health care coverage under the Anthem Blue Cross Health Account Plan ("HAP"), a program within the Plan.

4. At all times relevant to this action, the Employee Benefit Committee of PG&E Corporation ("EBC") acted as the Plan Administrator for the Plan.

5. PG&E, the Plan, and the EBC are located in this District.

6. Defendant Carelon Behavioral Health, Inc. is a Virginia corporation with its principal place of business in Boston, Massachusetts, that, on information and belief, was formerly known as Beacon Health Options, Inc. ("Beacon").

7. At all times relevant to this action, Defendant Carelon acted as the Claims Administrator for the Mental Health and Substance Abuse Program under the Plan, including using its former name, Beacon.

8. The Plan is a large-group, self-funded plan and is a welfare benefit plan under 29 U.S.C. § 1001 et seq., the Employee Retirement Income Security Act of 1974 ("ERISA").

9. This lawsuit seeks an order requiring the Plan to pay or reimburse expenses incurred during J.F.'s treatment at Elements.

10. Plaintiffs seek relief under ERISA and the Plan for benefits due under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"); for prejudgment interest; and for fees and costs pursuant to 29 U.S.C. § 1132(g).

11. <u>Jurisdiction.</u> This Court has jurisdiction over this case pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because Plaintiffs' claims arise under ERISA, a law of the United States.

12. <u>Venue.</u> Venue is appropriate in this District under 29 U.S.C. § 1132(e)(2) because the breaches alleged herein took place in this District, where Plaintiffs reside and where the benefits at issue were to be received, and because Defendants may be found in this District, where PG&E, the Plan, and the EBC are located. Venue is also appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

13. Divisional Assignment. Pursuant to Civil L.R. 3-2(c) and (d), this action arises in Contra Costa County, where Plaintiffs reside and where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred, and should therefore be assigned to the San Francisco Division or the Oakland Division.

## FACTUAL ALLEGATIONS

*Allegations regarding the Plan*

14. The EBC issued a Certificate Booklet entitled "Summary of Benefits Handbook" (the "Certificate Booklet").

15. Upon information and belief, the Certificate Booklet constitutes the official summary plan description for the Plan.

16. Steven F. enrolled himself and J.F. in the Plan's provision for family coverage.

17. In general, the family coverage under the Plan covers the health care expenses of the enrolled individual, spouse, and enrolled children.[1]

18. The Plan defines Covered Health Services as:

> Covered health services are those health services, supplies, or equipment provided for the purpose of preventing, diagnosing, or treating a sickness, injury, covered medical condition, or its symptoms. A covered health service is a MEDICALLY NECESSARY health care service or supply described under "What the HAP Covers" on page 144 as a covered health service and which is not excluded under "What the HAP Doesn't Cover" on page 153, such as experimental or investigational services or unproven services.[2]

19. The Plan covers mental health and substance abuse treatment, stating the following under the heading "Psychiatric Care and Substance Abuse Treatment":

> For Anthem HAP members, only MEDICALLY NECESSARY detoxification that is considered to be medical care is covered by the medical provisions administered by Anthem Blue Cross. Psychiatric care and substance abuse treatment are covered under the mental health and substance abuse provisions of the Plan, but are administered by ValueOptions.[3]

---

[1] Certificate at 20.
[2] Certificate at 130.
[3] Certificate at 149.

20. Mental health expenses covered under the Plan include:

- Inpatient treatment;
- Residential treatment centers;
- Day centers; and
- Outpatient treatment (Institutional, Professional, and Intensive).[4]

21. The Plan does not define "inpatient treatment" or "residential treatment centers."[5]

22. Substance abuse treatment expenses covered under the program include:

- Outpatient treatment;
- Alternative Levels of Care:
    - Partial hospitalization;
    - Residential programs; and
    - Intensive and structured outpatient treatment;
- Medically necessary detoxification (inpatient); and
- Inpatient hospitalization. [6]

23. The Plan does not define what constitutes a "residential program" under the Alternative Levels of Care heading, nor does it define an Alternative Level of Care.[7]

24. The Plan states that it will not pay for mental health/substance abuse services that are "performed by a non-licensed provider for mental health or substance abuse treatment." [8]

*Treatment at Elements*

25. J.F. was diagnosed with several serious mental health and substance use disorders recognized in the DSM-5. J.F. engaged in various behaviors symptomatic of these disorders, requiring intermediate mental health treatment.

26. With the assistance and guidance of mental health and other professionals, Steven F. located Elements, a behavioral health and substance use facility able to provide for J.F.'s particularized needs.

27. On June 2, 2021, J.F. was admitted to Elements.

---

[4] Certificate at 162.
[5] Certificate at 176-181.
[6] Certificate at 162.
[7] Certificate at 176-181.
[8] Certificate at 165.

28. J.F. received treatment at Elements for their mental health disorders and substance use disorder.

29. J.F.'s treatment at Elements at issue here occurred from June 2, 2021, through August 20, 2021, and from March 23, 2022, through May 11, 2022.

30. At all times relevant hereto, Elements was a 24-hour, seven-day-a-week outdoor behavioral health treatment facility duly licensed by the State of Utah to provide intermediate behavioral health and substance abuse services.

31. Elements provided inpatient mental health and substance abuse treatment and support to adolescents experiencing mental health and substance-related disorders.

32. Elements provided mental health treatment services that were less intensive than acute hospitalization but more intensive than outpatient therapy, qualifying it as an intermediate or sub-acute behavioral health facility.

33. J.F. benefited from the intensive mental health and substance abuse treatment provided at Elements and experienced improvement in their diagnosed conditions as a result of the services received.

34. Claims for J.F.'s treatment were submitted to Carelon for payment under the Plan.

*Denial and Appeals Relating to J.F.'s Treatment at Elements from June 2, 2021 through August 20, 2021*

35. Through a series of Explanations of Benefits ("EOBs"), Carelon denied payment for J.F.'s treatment at Elements from June 2, 2021, through August 20, 2021.

36. Plaintiffs received an EOB dated February 4, 2022, stating that J.F.'s claims had been denied for the following reasons:

> The service billed is not covered service. Important member information about this denial: Please refer to the 'mental health/substance abuse benefits and/or coverage limits and exclusion' provisions as described in your summary plan description or plan document.

37. Plaintiffs also received two denial letters from Carelon dated March 18, 2022, and March 22, 2022, relating to those dates of service.

38. The March 18, 2022 letter stated in relevant part:

> This letter is to inform you that no certification or no additional certification was given for the above referenced member because
>
> THE PROV [sic] IS NOT ELIGIBLE TO RECEIVE REIMBURSEMENT UNDER THE BENEFIT PLAN
>
> This decision is based on the information in the benefits plan as outlined in the Summary Plan description.

39. The March 22, 2022 letter stated in relevant part:

> You requested Residential Mental Health Treatment.
>
> This letter is to inform you that no certification or no additional certification was given for the above referenced member because this type of treatment, Wilderness Program, is not covered by the Plan.
>
> This determination is based on the design of your benefits as outlined in the Summary Plan Description (SPD). Please see section 'Mental Health and Substance Abuse Plan' in your SPD.

40. Carelon did not cite or identify any specific Plan provision supporting the denial in either its EOB or denial letters.

41. In a letter dated August 24, 2022, Plaintiffs requested a Level One Member Appeal of Carelon's benefit denials relating to J.F.'s treatment at Elements from June 2, 2021, through August 20, 2021.

42. The Level One Member Appeal is summarized in relevant part here. Among other things, Plaintiffs:

a. Requested that Carelon provide a review that considered all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

b. Requested that Carelon assign a medical or vocational expert knowledgeable about generally accepted standards and clinical best practices for outdoor behavioral health programs in the State of Utah;

c. Requested that Carelon assign a reviewer who is board certified in child and adolescent psychiatry and has experience treating adolescents with dysthymia,

attention-deficit/hyperactivity disorder ("ADHD"), cannabis abuse, oppositional defiant disorder, and other high-risk behaviors in an intermediate outdoor behavioral health setting;

d. Requested that Carelon's response to Plaintiffs' appeal set forth, in a manner calculated to be understood by the claimant: (i) the specific reason or reasons for the adverse determination; (ii) references to the specific Plan provisions on which the determination was based; and (iii) a description of any additional material or information necessary to perfect the claim and an explanation of why such information was necessary;

e. Requested copies of all documents used for the initial benefit determination and appeal determination, as well as the reviewer's name, credentials, experience, and case notes or report;

f. Pointed out that the Plan provides coverage for "mental health expenses," including "inpatient treatment" and "residential treatment centers," and for "substance abuse treatment," including "Alternative Levels of Care" and "residential programs";

g. Pointed out that treatment at Elements fell within the categories of covered mental health and substance abuse treatment and that the Plan contained no limitation or exclusion for intermediate behavioral health treatment, outdoor behavioral health programs, or wilderness programs;

h. Pointed out that, while the Plan excludes services provided by unlicensed providers, that exclusion did not apply because Elements is duly licensed to provide the mental health and substance abuse services rendered to J.F.;

i. Argued that the Plan appears to cover "Alternative Levels of Care" when the primary diagnosis is a substance use disorder while excluding similar levels of care when the primary diagnosis is a mental health condition. Plaintiffs asserted that this distinction suggests the application of a diagnosis-based nonquantitative treatment

limitation ("NQTL") that does not appear to apply to analogous medical/surgical benefits;

j. Noted that Elements had effectively been denied as a non-covered facility even though the Plan did not expressly exclude intermediate behavioral health facilities or residential mental health treatment facilities from coverage. Plaintiffs asserted that the denial raised concerns regarding the application of a facility-type NQTL to mental health benefits that is not applied to analogous medical/surgical benefits;

k. Further noted that the denial notices identified Elements as a non-covered facility benefit yet failed to identify any specific Plan provision supporting that determination, raising concerns that claims for intermediate behavioral health treatment are automatically flagged for denial pursuant to an undisclosed claims-processing rule, guideline, edit, or administrative practice functioning as an NQTL; and

l. Requested that Carelon conduct a comparative parity analysis to determine whether the Plan was being administered in compliance with the MHPAEA and provide copies of the documentation relied upon in conducting that analysis.

43. In a letter dated September 30, 2022, Carelon (then known as Beacon) denied the appeal, stating, in relevant part:

> In this appeal, you requested reimbursement for Outdoor Behavioral Health services 06/02/21 through 08/20/21. On Jan. 20, 2022, the provider submitted a claim for these dates with revenue code 1006, Outdoor/Wilderness Behavioral Health services. Then, on Feb. 9, 2022, the provider submitted a replacement claim for these dates of service, billing for Residential Mental Health Treatment, revenue code 1001. The billed diagnosis and corresponding description is available upon request by contacting our Beacon Customer Service Department at . . . .
>
> The substance of the appeal, based on all information provided, has been thoroughly researched. The following determination has been made:
>
> The denial is upheld based upon the information provided to Beacon Health Options.
>
> Under the terms of your benefit plan, certification is required in order to reimburse claims for Residential Mental Health Treatment. When Beacon reviewed the provider's

> request for certification, we found no indication that the provider is appropriately licensed and accredited to render Residential Mental Health Treatment. Certification was administratively denied on the basis that the provider is not eligible to receive reimbursement for the billed services. We also advised you that Outdoor/Wilderness Behavioral Health services are not a covered benefit under your plan. As a result, the denial is upheld.
>
> This determination is based on the design of your benefits as outlined in the Summary Plan Description. Your employer is responsible for providing the Summary Plan Description.
>
> The following information specific to the appeal was used in the decision:
> • The Member's Appeal
> • The Member's Summary Plan Description
> • The Member's Claim History
> • The Member's Certification History

44. The appeal denial did not respond to Plaintiffs' argument that J.F.'s treatment at Elements fell within the Plan's mental health and substance abuse coverage provisions, nor did it address Plaintiffs' contention that the licensure exclusion was inapplicable because Elements was duly licensed to provide the services rendered.

45. Nor did the appeal denial identify any Plan provision demonstrating that coverage was unavailable. Instead, Carelon stated only that the determination was "based on the design of your benefits as outlined in the Summary Plan Description" and that Plaintiffs' "employer is responsible for providing the Summary Plan Description."

46. Moreover, in response to the Level One Member Appeal, Carelon did not provide any of the documents requested by Plaintiffs, including the requested parity analysis.

47. Plaintiffs subsequently filed a Level Two Member Appeal.

48. In their Level Two Member Appeal, Plaintiffs reiterated, among other things, their contention that the Plan, either on its face or as administered, violated the MHPAEA and again requested the comparative parity analysis previously requested in the Level One Member Appeal.

49. Plaintiffs also argued that Carelon's denial letters, including its Level One Appeal denial, deprived Plaintiffs of the full and fair review required by ERISA because Carelon failed to address Plaintiffs' arguments concerning coverage under the terms of the Plan.

50. Specifically, Plaintiffs pointed out that Carelon did not respond to Plaintiffs' contention that the Plan provides coverage for inpatient mental health treatment, residential treatment, and alternative levels of care for substance use disorders and that the treatment provided by Elements fell within those categories of covered services.

51. Plaintiffs further noted that Carelon failed to identify any provision of the Plan excluding coverage for the services provided by Elements or otherwise explain why the cited coverage provisions did not apply.

52. Additionally, Plaintiffs observed that the Plan did not define the term "Residential Treatment Center." As a result, nothing in the Plan's terms establishes that Elements could not qualify as a covered Residential Treatment Center or otherwise fall within a covered category of care.

53. Plaintiffs further noted that Elements initially billed the services under a revenue code associated with outdoor behavioral health treatment and later rebilled the claims as residential treatment after communications with Carelon, only for Carelon to deny coverage under both characterizations.

54. Plaintiffs further asserted that Carelon failed to identify any additional information necessary to perfect the claim or explain what evidence, if any, would support a different outcome.

55. In a letter dated January 27, 2023, Carelon informed Plaintiffs that their Level Two Member Appeal was denied. Carelon stated:

> In this appeal, you requested coverage and payment for revenue code 1006, outdoor wilderness behavioral healthcare, for dates of service 06/02/21 through 08/20/21. The billed claims for the dates of service were previously denied for not a covered service and benefit not covered. The billed diagnosis and corresponding description is available upon request by contacting Beacon Customer Service Department at . . . .
>
> The substance of the appeal, based on all information provided, has been thoroughly researched. The following determination has been made:
>
> The denial will be upheld based upon the information provided to Beacon Health Options.
>
> The current decision to deny your request was based on the fact that the documentation that you requested is being gathered and will be delivered to you as

soon as practical. The claims on file were billed for revenue code 1006, outdoor behavioral health treatment, and revenue code 1001, residential mental health treatment. We are unable to approve payment for revenue code 1006 because your benefit plan does not include coverage for outdoor behavioral health treatment. We are unable to approve payment or certification for revenue code 1001 because your benefit plan requires all providers to be licensed and Joint Commission accredited for the services billed, and Elements Wilderness Program does not appear to hold these credentials for residential treatment. The denials are therefore upheld.

Your letter questioned a claim denial notice for code 1006, advising, "resubmit a corrected claim." It is true that code 1001 is covered under your benefit plan, but you indicate that it does not accurately reflect the services rendered. When Beacon receives a claim that is not payable as billed, the systematically generated Explanation of Benefits may include a prompt to submit a corrected claim. This is because non-payable claims often include coding errors that can be cured by an accurate, appropriately corrected claim. The provider is still responsible for ensuring all claims accurately reflect the services rendered.

Beacon acknowledges your request for pertinent information and is preparing the information for you. This includes:

- The benefit plan exclusion that is the basis for denial;
- The information relating to your claims;
- The plan provisions, medical criteria, and other documents utilized in making our decisions;
- The identification and credentials of any clinician who reviewed your claims;
- Information showing that the plan is administered in accordance with the MHPAEA, including a statutory parity analysis;
- A response to your assertions regarding non-quantitative treatment limits; and
- The qualifications of the individuals who reviewed your requests.

As requested, we will also include a description of any additional material or information necessary to perfect the claim along with any explanation of why such information is necessary. Please be assured that if you submit additional information in response, Beacon will conduct a thorough review of that submission.

Finally, we have confirmed that the claims on file include dates of service 06/02/2021 through 08/20/2021, billed with revenue code 1006, for a total billed amount of $43,600.00. Our files also include the 32-page treatment records from Elements Wilderness Program.

This determination is based on the design of your benefits as outlined in the Summary Plan Description. Your employer is responsible for providing the Summary Plan Description.

The following information specific to the appeal was used in the decision:
• The Member's Appeal

- The Member's Benefit Plan
- The Member's Claim History
- The Member's Authorization History
- The Member's inquiry History

56. The Level Two Appeal denial did not meaningfully address Plaintiffs' arguments that the treatment provided by Elements fell within categories of care that are expressly covered under the Plan.

57. Rather than analyzing the Plan's coverage provisions and applying them to the facts of J.F.'s treatment, Carelon merely stated its conclusion that coverage was unavailable.

58. Moreover, the Plan does not define "residential treatment center" or otherwise establish criteria by which Plaintiffs could determine whether a facility qualifies for residential treatment coverage. The denial likewise failed to identify any Plan language establishing that Elements could not qualify under that category.

59. Additionally, the denial did not identify any provision of the Plan expressly excluding intermediate behavioral health treatment, outdoor behavioral health treatment, wilderness treatment, or the services provided by Elements.

60. Although the denial suggested that coverage was unavailable due to Elements' alleged lack of appropriate licensure or accreditation, it failed to identify any provision of the Plan requiring Joint Commission accreditation, requiring a particular type of licensure, or otherwise explaining why Elements did not qualify for coverage under the Plan's mental health and substance abuse treatment provisions.

61. The denial also represented that the documentation requested by Plaintiffs was being gathered and would be provided "as soon as practical." But Carelon never provided the requested documents, including the Plan provisions purportedly supporting the denial and the requested parity analysis.

62. Notably, the Level Two Appeal denial stated that "[t]he current decision to deny your request was based on the fact that the documentation that you requested is being gathered and will be delivered to you as soon as practical."

63. The fact that Carelon had not yet gathered the requested documents, including the Plan language purportedly supporting the denial, does not constitute a legitimate basis for denying benefits under the Plan.

64. Moreover, Carelon's statement further supports Plaintiffs' concern that claims for intermediate behavioral health treatment were automatically flagged for denial and denied without reference to the actual language of the Plan.

65. The Level Two Appeal denial letter stated that it was "the final level of appeal available to [Plaintiffs] through Beacon [n/k/a Carelon] and your Plan."

66. Plaintiffs exhausted all internal appeal rights and administrative remedies available under the Plan with respect to benefits sought for J.F.'s treatment at Elements from June 2, 2021, through August 20, 2021.

*Denial and Appeals Relating to J.F.'s Treatment at Elements from March 23, 2022 through May 11, 2022*

67. Plaintiffs submitted claims for J.F.'s treatment at Elements from March 23, 2022, through May 11, 2022. Through a series of EOBs, Carelon denied coverage under remark codes "1" and "2" and "HT" and "IS," which included the following information.

> 1 The service billed is not a covered service. Important member information about this denial: Please refer to the 'mental health/substance abuse benefits and/or coverage limits and exclusion' provisions as described in your summary plan description or plan document.
>
> 2 Benefit not covered. Please validated the diagnosis, service code and member identification billed. Please submit a corrected claim as appropriate.
>
> *****
>
> HT The provider is not contracted to provide this service.
>
> IS Benefit not covered. Please validate the diagnosis, service code and member identification billed. Please resubmit corrected claim as appropriate.

68. Plaintiffs filed a Level One Member Appeal dated March 29, 2024.

69. With respect to the substance of Plaintiffs' appeal on the merits of the decision that the Plan did not cover J.F.'s additional treatment at Elements from March to May 2022, this appeal asserted essentially the same arguments, objections, and requests raised in Plaintiffs' prior appeals regarding J.F.'s treatment at Elements from June 2, 2021, through August 20, 2021.

70. Plaintiffs further reiterated their earlier concerns about Defendants' compliance with the MHPAEA. Among other things, Plaintiffs requested that Carelon: (a) provide a comparative parity analysis; (b) address Plaintiffs' coverage arguments; and (c) identify the specific Plan provisions supporting the denial of benefits.

71. Carelon denied the Level One Appeal in a letter dated October 1, 2024. In doing so, Carelon did not meaningfully address Plaintiffs' appeal arguments, provide the review requested by Plaintiffs, or provide the requested parity analysis.

72. Instead, Carelon denied the Level One Appeal, stating:

> In this appeal, you requested authorization and payment for Outdoor Wilderness Behavioral Healthcare, revenue code 1006, for dates of service 03/23/22 to 05/11/22. The billed claims for the dates of services were previously denied for benefit not covered, not a covered service, and not a contracted service. The billing diagnosis and corresponding description is available upon request by contacting our Carelon Behavioral Health Customer Service Department at . . . .
>
> The substance of the appeal, based on all information provided, has been thoroughly researched. The following determination has been made:
>
> The denial will be upheld based upon the information provided to Carelon Behavioral Health.
>
> The current decision to deny your request was based on the fact that revenue code 1006 is not listed as a covered code under the member's mental health and substance use plan through Carelon Behavioral Health. Therefore, the claims were processed correctly.
>
> You asked whether Carelon Behavioral Health is in compliance with the mental health parity laws. As the administrator of mental health benefits for your plan, Carelon Behavioral Health adheres to state and federal mental health parity laws. This was a benefit denial, not a medical necessity determination. nonquantitative treatment limitation—such as medical necessity criteria—were therefore not applied because it was determined that this is not a covered benefit, not a covered service and not a contracted provider according to your plan.

> The determination is based on the design of your benefits as outlined in the Summary Plan Description. Your employer is responsible for providing the Summary Plan Description.

73. The Level One Appeal denial did not identify any specific Plan provision demonstrating why the treatment provided to J.F. by Elements failed to qualify for coverage under the Plan's mental health and substance abuse treatment provisions.

74. Nor did the denial explain why the treatment provided by Elements did not fall within the Plan's covered categories of care, including inpatient treatment, residential treatment, alternative levels of care, or residential substance abuse programs.

75. Although Carelon asserted that revenue code 1006 was not a covered billing code, it did not explain how the use of a particular billing code established that the services rendered were excluded from otherwise applicable categories of covered care under the Plan.

76. Plaintiffs thereafter filed a Level Two Member Appeal, as required by the Plan, in a letter dated December 23, 2024.

77. In their Level Two Member Appeal, Plaintiffs again asserted that the denial failed to provide the full and fair review required by ERISA, renewed their concerns regarding compliance with the MHPAEA, and renewed their request for a comparative parity analysis and related information concerning the basis for the denial.

78. Plaintiffs further reiterated the arguments raised in their prior appeals, including that Carelon had failed to identify the Plan provisions supporting the denial or explain why the treatment provided by Elements did not qualify for coverage under the Plan.

79. Carelon denied the Level Two Member Appeal in a letter dated January 23, 2025, stating in relevant part:

> In this appeal, you request payment for Wilderness Program, revenue code 1006, outdoor/wilderness behavioral healthcare, for dates of service 3/22/22 through 05/11/22. The billed claims for the dates of service were previously denied for not a covered benefit. The billed diagnosis and corresponding description is available upon request by contacting our Carelon Behavioral Health Customer Service Department at . . . .
>
> The substance of the appeal, based on all information provided, has been thoroughly researched. The following determination had been made:

> The denial will be upheld based upon the information provided to Carelon Behavioral Health.
>
> The current decision to deny your request was based on the fact that this case was reviewed with our legal team, and it was determined that the service being billed (revenue code 1006), is not a covered service under the behavioral health portion of the benefit plan. This is not a decision that can be altered by Carelon Behavioral Health, as the denial is based on the design of the benefit plan provided by the employer. Therefore, the claim in question denied correctly, and the denial is upheld. Furthermore, Carelon Behavioral Health is in compliance with Parity laws. As the administrator of mental health benefits for your plan, Carelon Behavioral Health adheres to state and federal mental health parity laws. This was a benefit denial, not a medical necessity determination, Nonquantitive treatment limitations—such as medical necessity criteria—were therefore not applied because it was determined that this is not a covered benefit, not a covered service, and not a contracted provider according to your plan.
>
> This determination is based on the design of your benefits as outlined in the Summary Plan Description. Your employer is responsible for providing the Summary Plan Description.

80. The Level Two Appeal denial did not address Plaintiffs' appeal arguments, identify the Plan provisions purportedly supporting the denial, or provide the requested parity analysis and related information.

81. The Level Two Appeal denial stated this "is the final level of appeal available to you through Carelon Behavioral Health and your plan."

82. Through these appeals, Plaintiffs exhausted all internal appeal rights and administrative remedies available under the Plan with respect to benefits sought for J.F.'s treatment at Elements from March 23, 2022, through May 11, 2022.

83. After exhausting their administrative remedies with respect to both periods of treatment, litigation was Plaintiffs' only option to enforce their rights to benefits owed under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

84. Plaintiffs thereafter retained undersigned counsel to pursue their rights and remedies under ERISA.

85. The remedies Plaintiffs seek herein are for the benefits due pursuant to 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants'

violation of the MHPAEA, prejudgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

86. Plaintiffs do not seek double recovery.

**FIRST CAUSE OF ACTION**

**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))**

87. All allegations of this Complaint are incorporated by reference as if set forth herein.

88. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Defendants, to "discharge [their] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

89. Defendants wrongly excluded coverage for J.F.'s treatment in violation of the terms of the Plan, which promise benefits to employees and their dependents for their health care expenses including treatment of a mental illness and/or substance use disorder.

90. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring administrators to provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

91. Carelon/the Defendants breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in J.F.'s interests and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of J.F.'s claims.

92. The actions of Defendants in denying payment for J.F.'s treatment are a violation of the terms of the Plan, as written, and/or as reformed as required or permitted under ERISA.

**SECOND CAUSE OF ACTION**

**(Violation of the Mental Health Parity and Addiction Equity Act)**

93. All allegations of this Complaint are incorporated by reference as if set forth herein.

94. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Carelon/the Plan's fiduciary duties.

95. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

96. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

97. Impermissible nonquantitative treatment limitations ("NQTLs") under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

98. Impermissible NQTLs also include processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

99. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for J.F.'s treatment at Elements include subacute intermediate inpatient treatment settings such as skilled nursing facilities, habilitative facilities, and hospice facilities.

100. The Plan does not exclude coverage for health care expenses of medical/surgical conditions based on geographic location, facility type, diagnosis type, provider specialty, or other criteria in the manner claimed by Defendants for J.F.'s treatment at Elements.

101. Upon information and belief, Defendants' denial of coverage also violated the MHPAEA in application or effect. Because Defendants declined to produce the documents and

materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

102. Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

103. Plaintiffs expressly requested Carelon to perform an MHPAEA analysis of the Plan. They expressed serious concern that Defendants were violating the statute and asked for a response using specific and direct examples. Carelon failed or declined to do this and failed or declined even to address the MHPAEA in its Denial Letter.

104. The MHPAEA violations by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3), including, but not limited to:

a. A declaration that the actions of Defendants violate the MHPAEA;

b. An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

c. An Order requiring the reformation of the terms of the Plan and the medical necessity criteria used by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

d. An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

e. An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

f. An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

g. An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

h. An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

105. In addition, Plaintiffs are entitled to an award of prejudgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs seek relief as follows:

1. Judgment in the total amount incurred for J.F.'s treatment at Elements;
2. Pre- and post-judgment interest to the date of payment;
3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;
4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and
5. For such further relief as the Court deems just and proper.

DATED this 28th day of September, 2026.

By: /s/ James B. Hardin

James B. Hardin, CA Bar No. 205071
jhardin@hardintrial.com
HARDIN LAW GROUP, APC
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Telephone: (949) 337-4810

*Attorneys for Plaintiffs*